UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No.: 5:11-cv-354

K.C. et al., individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

LANIER CANSLER, in his official capacity as Secretary of the Department of Health and Human Services, et al.,

    Defendants.

**MOTION TO DISQUALIFY COUNSEL**

NOW COME THE PLAINTIFFS, through their undersigned counsel, and hereby move the Court to disqualify one of Defendant's attorneys. As grounds for this motion, Plaintiffs show by the attached affidavits and other documents that:

1. Mr. Raboteau T. Wilder, Jr. of the law firm of Womble, Carlyle, Sandridge & Rice (Womble) has entered his notice of appearance as one of the attorneys for two of the Defendants in this matter.

2. Three attorneys employed by Womble are counsel of record for the Plaintiffs in another pending lawsuit, *DTM v. Cansler*, 7:08-CV-57-H (E.D.N.C.). In that case, filed in May 2008, Devon Tyler McCartney ("McCartney") and others filed a class action lawsuit in the Eastern District of North Carolina (Civ. No. 7:08-CV-57-H) against Dempsey Benton, the then Secretary, North Carolina Department of Health and Human Services, challenging the lack of basic due process protections for Medicaid recipients when their providers' request for behavior health and developmental disability services are denied, reduced or terminated by the Defendant or its agent, ValueOptions.

3. Two of the undersigned attorneys, Mr. Sea and Ms. Perkins, are also attorneys for the Plaintiffs in *DTM v. Cansler*. During the course of that representation, LSSP, through its lead counsel, Douglas Stuart Sea and NHLP, through its lead counsel, Jane Perkins, shared a significant amount of confidential information and work product with Womble and twenty-three or more of its attorneys and staff members.

4. This confidential information and work product was significant to the Plaintiffs' case in *DTM v. Cansler*, which led to a contingent Settlement Agreement with the Defendants in October, 2010. The Settlement Agreement was intended by the parties and approved by the Court in order to provide substantial classwide relief.

5. The Settlement Agreement in *DTM v. Cansler* was approved by the Court, contingent upon the parties being able to resolve any issues outstanding concerning the Defendant's compliance with the terms of the Settlement Agreement at the end of a prescribed six-month period. This six-month period during which compliance will be measured has not yet begun. Several disputes about the Defendant's compliance with the Settlement Agreement have already arisen. If the parties are unable to resolve those issues, the Settlement Agreement, by its own terms, will become void and the litigation will resume, with discovery to commence immediately at that point. After some discovery has occurred, the Court is then expected to rule on plaintiffs' motion for class certification.

6. Womble has committed itself to play a critical role in the discovery process and in continuing its factual investigation, should the litigation resume.

7. LSSP and NHLP have and will continue to rely heavily on Womble's assurance to play this important role in the litigation. LSSP and NHLP are small, non-profit law firms that lack

the resources that Womble can bring to the complex discovery and evidentiary development process which will be needed if the litigation resumes.

8. The attorneys in Womble have continuing duties to the plaintiffs and putative class members in *DTM. v. Cansler,* particularly because the terms the settlement agreement approved by the Court in that case specify that the agreement will becomes void and the litigation will resume if the parties are unable to resolve issues that are currently outstanding concerning the Defendant's compliance with the Settlement Agreement .

9. A significant number of members of the putative class in *DTM v. Cansler* are also members of the putative class in the instant case.

10. There is a substantial similarity between the two cases, including a common defendant, a number of very similar factual allegations, common plaintiff class members, and very similar legal claims and, it is expected, very similar defenses.

11. Upon receiving notice of his appearance, Mr. Sea immediately contacted Mr. Wilder to make him aware of the conflict of interest which his firm has and to request that he withdraw as counsel in this case. Wilder has declined to withdraw and Womble attorneys have also declined repeated requests by LSSP to participate in joint discussions concerning this matter with appropriate staff and counsel of the North Carolina State Bar.

12. Womble attorneys informed Mr. Sea and Ms. Perkins that an internal screen has been put in place to prevent the sharing of confidential information between the two cases. However, Mr. Sea was informed by a senior staff member of the N.C. State Bar that such an internal screen is not sufficient to resolve the conflict of interest and prevent a violation of Bar rules.

13. Plaintiffs' counsel are of the opinion, and therefore believe, that Wilder, as well as the Womble Law Firm have a conflict of interest in violation of 1.7 and 1.8 of the Rules of Professional Conduct promulgated by the North Carolina State Bar, based on the following:

   a. The *DTM v. Cansler* case is not over and Womble continues to have duties of loyalty to the class in that case and North Carolina State Bar rules do not permit them to prosecute and defend the same client.

   b. Womble has stated it will or might withdraw from the *DTM v. Cansler* case but it cannot withdraw without consent of the client and/or Court approval which has not been obtained;

   c. The interests of the Plaintiff class will be substantially prejudiced if Wilder and Womble are permitted to withdraw from *DTM v. Cansler* case.

   d. A substantial amount of confidential work product was shared with a significant number of Womble lawyers and staff in *DTM v. Cansler* that is very relevant to the K.C. case.

   e. There is a significant overlap between the two classes and many persons belong to the classes in both cases.

   f. The two cases are closely related both legally and factually and particularly those allegations in Paragraph 117 through 164 of the *DTM v. Cansler* Complaint and the allegations contained in Paragraphs 108 through 134 of the K.C. case are identical.

   g. Nothing in the Rules permits an "internal screen" to be installed by an attorney which obviates a conflict of interest.

14. Comment No. 24 to Rule 1.7 states, in part:

"A conflict of interest exists if there is a significant risk that a lawyer's action on behalf of one client will materially limit the lawyer's effectiveness in representing another client in a different case."

15. This is clearly applicable in the K.C. case. Womble and its lawyers cannot effectively advocate in one direction in *DTM v. Cansler* and simultaneously advocate in the opposite direction in the K.C. case, given that Womble represents clients in one case who are adverse in the second case.

16. Rule 1.7(a)(2) states:

"A conflict of interest exists if the representation of one or more clients may be materially limited by the lawyer's responsibility to another client. . ."

17. Note No. 6 to Rule 1.7 states:

"Loyalty to a current client prohibits undertaking representation directly adverse to that client without that client's informed consent. Thus, absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even if the matters are wholly unrelated. The client as to whom the representation is directly adverse is likely to feel betrayed, and the resulting damage to the client/lawyer relationship is likely to impair the lawyer's ability to represent the client effectively."

18. Ethics Opinion CPR 147 provides:

"An attorney cannot defend an action brought by a former client, when confidential information obtained during the prior representation would be relevant to the defense of the current action."

19. Plaintiffs' counsel believe that the plaintiffs and putative class members in both cases will be prejudiced by Womble's participation in this case or by Womble's withdrawal from *DTM v. Cansler*.

20. To the undersigned's knowledge, no named plaintiff or putative class member in either case has consented to Womble's participation in this case or to Womble's withdrawal as counsel in *DTM v. Cansler*.

21. A formal grievance with the N.C. State Bar is being filed shortly on behalf of LSSP, NHLP, and the plaintiffs and class members in both cases.

WHEREFORE, Plaintiffs move the Court to disqualify Raboteau T. Wilder, Jr. and other members of the law firm of Womble Carlyle Sandridge & Rice from continuing as attorneys for Defendants in this matter.

This the 23rd day of August, 2011.

ATTORNEYS FOR PLAINTIFFS

/s/ Douglas S. Sea_____
Douglas Stuart Sea
N.C. State Bar No. 9455
LEGAL SERVICES OF SOUTHERN PIEDMONT, INC.
1431 Elizabeth Avenue
Charlotte, North Carolina 28204
Telephone: (704) 376-1600
dougs@lssp.org

/s/ John R. Rittelmeyer_____
John R. Rittelmeyer
N.C. State Bar No. 17204
Jennifer L. Bills
N.C. State Bar No. 37467
DISABILITY RIGHTS NC
2626 Glenwood Avenue, Suite 550
Raleigh, NC 27608
Phone: (919) 856-2195
Fax: (919) 856-2244
john.rittelmeyer@disabilityrightsnc.org
jennifer.bills@disabilityrightsnc.org

/s/ Jane Perkins
Jane Perkins
N.C. State Bar No. 9993
Jina Dhillon
N.C. State Bar No. 41997
NATIONAL HEALTH LAW PROGRAM
101 E. Weaver Street, Ste. G-7
Carrboro, NC 27510
Telephone: (919) 968-6308
perkins@healthlaw.org

## CERTIFICATE OF SERVICE

I certify that on this day, I served a true copy of the Plaintiffs' Motion to Disqualify Counsel and supporting Affidavits upon the Defendants' attorneys via electronic means through the CM/ECF system to:

Ms. Belinda Smith, N.C. Department of Justice
Wallace C. Hollowell and Stephen D. Martin, Nelson Mullins Rile & Scarborough
Raboteau T. Wilder, Jr., Womble Carlyle Sandridge & Rice

This the _23rd day of August, 2011.

/s/ _____
Douglas Sea