UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No.: 5:11-cv-354

| | |
|---|---|
| K.C. et al., individually and on behalf of all others similarly situated, | |
| Plaintiffs, and | **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER** |
| M.S., individually and on behalf of all others similarly situated, | |
| Intervenor Plaintiff | |
| v. | |
| LANIER CANSLER, in his official capacity as Secretary of the Department of Health and Human Services, et al., | |
| Defendants. | |

This lawsuit, filed on July 1, 2011, challenges significant reductions in the Medicaid-covered services provided to Plaintiffs and other severely disabled recipients which allow them to live at home instead of being placed in much more expensive and restrictive institutional settings. On August 24, 2011, Plaintiffs moved for a Preliminary Injunction to enjoin the reductions in their services and those of hundreds of others similarly situated that occurred on or about July 1, 2011. Briefing on that motion has been stayed pending a decision on a separate motion to disqualify one of Defendant Piedmont Behavioral Health's (PBH's) counsel.

Effective January 1, 2012, Defendants will execute another wave of service reductions, as required by the same undated notices mailed in March 2011 which required the July 1, 2011 reductions. *See e.g.* Dec. of Penny C Ex. G; Dec. of Rachelle S. Ex. H; Dec. of Africa Heath Ex. G. Plaintiffs K.C., D.C., and M.S. now move the Court for a Temporary Restraining Order to prevent Defendants from imposing these *additional* significant reductions in their Medicaid

1

services effective January 1, 2012.[1] Unless the Court acts, these three profoundly disabled children face even greater and more immediate risk of irreparable harm to their health, safety, development, and ability to live at home. As with the previous July 2011 reductions in their services, these additional services cuts will occur, unless this Court acts, without Defendants first providing to these Plaintiffs the "due process" required by the United States Constitution and the Medicaid Act—adequate written notice and the opportunity for an impartial hearing prior to services being reduced or terminated. *See* Plaintiffs' Memorandum in Support of a Preliminary Injunction at 4-19 (Docket Entry (DE) 32) (describing the process Defendants are using to implement both the July 1, 2011 and January 1, 2012 reductions, the multiple ways in which this process violates the legal requirements of due process, and the irreparable harm faced by plaintiffs and other putative class members as a result).

In their August 24, 2011 Memorandum in Support of Motion for a Preliminary Injunction (DE 32) and in M.S.'s October 21, 2011 Memorandum in Support of Motion to Intervene (DE 53),[2] Plaintiffs have demonstrated that they meet all of the requirements for preliminary injunctive relief.[3] The Court is referred to the content of those filings, which will not be repeated here.[4] However, supplemental declarations are filed herewith to update the Court on events that

---

[1] The Court denied Plaintiffs' Motion for a Temporary Restraining Order to enjoin the cuts that occurred on July 1, 2011. *See* Order (July 12, 2011) (Docket Entry (DE) 19). However, that Order was based only on the Complaint and thus occurred before Plaintiffs filed any evidence or legal authority.

[2] The Court granted the Motion to Intervene on December 5, 2011.

[3] *See also Pashby v. Cansler*, No. 5:11-cv-273-BO, 2011 WL 6130819, at *8 (E.D.N.C. Dec. 8, 2011) (order certifying the class, granting a preliminary injunction, and holding Plaintiffs likely to succeed on the merits of their due process claims).

[4] Plaintiffs hereby incorporate by reference their Memorandum in Support of Motion for a Preliminary Injunction (DE 32) and the Exhibits thereto, and Memorandum in Support of Motion to Intervene (DE 53), and the Exhibits thereto.

have occurred since the prior filings and to demonstrate Plaintiffs D.C.'s, M.S.'s, and K.C's now immediate need for injunctive relief.

Plaintiff M.S. suffered a twenty-one percent reduction of his necessary Medicaid services without due process on July 1, 2011. Rachelle S. Decl. Exs. C & H (DE 52-6 & 52-11).[5] On or about January 1, 2012, the Defendants will impose an additional twenty percent reduction in M.S.'s necessary services without according him due process, meaning that forty-one percent of the services M.S. needs will have been eliminated since July 1, 2011. *Id*. M.S. has not significantly regressed since July 2011 only because his care provider has continued to provide services to M.S. even though she is not getting paid for a significant amount of her time. Rachelle S. Supp. Dec. at ¶ 12. If the January 2012 cuts take effect, it is "very likely" that M.S. will lose his care provider altogether. *Id.* According to Bonnie West, a masters-level exceptional children specialist who has worked with M.S. for five years, the further reduction in M.S.'s services scheduled for January 1, 2012 will be "devastating," may lead to "very threatening" behaviors, will create "a safety issue," and will cause him to "almost surely regress." Bonnie West Dec. ¶¶ 12-15.

Plaintiff D.C. suffered a forty-one percent reduction of his necessary Medicaid services without due process on July 1, 2011. Penny C. Decl, Ex. G (DE 31-41). On or about January 1, 2012, the Defendants will make an additional ten percent reduction in D.C.'s necessary services, again without according him due process, meaning that over half of the services D.C. needs will have been eliminated since July 1, 2011. *Id*.; Penny C. Supp. Dec. ¶ 13. Since July, D.C.'s family has been struggling to keep services for D.C so that he will not "retreat into his own world," *Id.*

---

[5] As noted in Exhibit H (D.E. 52-11). PBH claimed that M.S. had a base budget of $51,679.44 from April 2010 through March 2011; however, his Individual Support Plan for that time period, shown in Exhibit C, clearly establishes that PBH had approved his budget at $64,142.64.

at 14, by paying from their own limited savings for the services Defendants eliminated. However, continuing to do so will "very soon" no longer be possible for this highly-stressed family if the January 2012 reductions take effect. *Id.* at ¶ 15. According to Wyndie Stitt, a board-certified behavioral consultant who has worked with D.C. for ten years, it is "absolutely critical" to prevent a reduction in D.C.'s services because "he is right in the middle of gaining a lot of skills, and if his services are cut now … he will stop progressing," "regress," "suffer from depression," be at risk of "retreating inward," and likely suffer an "increase in meltdowns, or other disruptive behavior." Wyndie Stitt Decl. ¶¶ 8-10.

Plaintiff K.C. suffered a five percent reduction of his necessary Medicaid services on July 1, 2011.[6]. Heath Decl. Exs. C & F (DE 31-64 & 31-67). On or about January 1, 2012, the Defendants will make an additional nineteen percent reduction in K.C.'s necessary services, again without according him adequate due process, meaning that twenty-four percent of the services K.C. needs will have been eliminated since July 1, 2011. *Id.* K.C.'s mother Africa Heath describes the harm he has already suffered from even the small reduction in his services, which will be magnified significantly if the much greater January 2012 cuts take effect. Heath Supp. Dec. Already his negative behaviors have increased, such as hitting the wall and throwing objects at others, and he has less time in the community and has regressed in the skills he had learned. *Id*. at ¶¶ 7, 8, 10. The much larger cuts scheduled for January 1, 2012 are expected to worsen these problems. *Id*. at ¶¶ 11-12.

PBH has refused requests to rescind the January 2012 reductions for M.S. and D.C. even though its own most recent evaluations demonstrate that both children need more services. As PBH admits, the Support Needs Matrix categories in which these children were placed, which in

---

[6] K.C. was able to successfully change his SNM category from a B (wherein he would have lost 20 percent of his services) to a Category D. Health Decl. Exs.C & F (DE 31-64 & 31-67).

4

turn required both the July 2011 and January 2012 service reductions, were primarily based on Support Intensities Scale (SIS) evaluations performed by PBH employees. PBH Ans. ¶ 48 (DE 38). Because the SNM categories and corresponding budget limits assigned to M.S. and D.C. are not adequate to provide the services these children need, both families requested and eventually received new SIS evaluations by PBH in November 2011. Penny C. Supp. Dec. Ex. A; Rachelle S Supp. Dec. Ex. A. Both children's new SIS evaluations showed dramatically higher levels of need than the prior SIS scores upon which the July 2011 and January 2012 cuts are based. *Id*. Upon receiving the summaries of their children's new SIS scores in mid-November 2011, both M.S.'s and D.C.'s parents promptly requested of PBH immediate increases in their services based on the higher SIS scores. Penny C. Supp. Dec. ¶ 8; Rachelle S. Supp. Dec. ¶¶ 4-5. To date, PBH has refused both requests, but has failed to provide any written notice of that refusal or any right to a hearing to challenge that refusal. Penny C. Supp. Dec. ¶ 9; Rachelle S. Supp. Dec. ¶ 10. Thus, unless this Court acts immediately, Defendants will once again significantly reduce critical services to these children without first providing notice and an opportunity for a hearing to challenge their decisions as required by due process.

## CONCLUSION

For the foregoing reasons and those stated in Plaintiffs' prior filings, Plaintiffs request that this Court issue a Temporary Restraining Order prohibiting Defendants from further reducing Medicaid services to Plaintiffs K.C., D.C., and M.S. effective January 1, 2012 until Defendants first comply with the Due Process requirements of the United States Constitution and the Medicaid program. Plaintiffs also renew their pending request for a preliminary injunction requiring Defendants to restore services to all Plaintiffs and putative class members to the levels in effect prior to July 1, 2011.

5

Dated:  December 20, 2011        ATTORNEYS FOR PLAINTIFFS

/s/ Douglas S. Sea_____
Douglas Stuart Sea
N.C. State Bar No. 9455
LEGAL SERVICES OF SOUTHERN PIEDMONT, INC.
1431 Elizabeth Avenue
Charlotte, North Carolina 28204
Telephone: (704) 376-1600
dougs@lssp.org


/s/ John R. Rittelmeyer_____
John R. Rittelmeyer
N.C. State Bar No. 17204
Jennifer L. Bills
N.C. State Bar No. 37467
Morris F. McAdoo
N.C. State Bar No. 34851
DISABILITY RIGHTS NC
2626 Glenwood Avenue, Suite 550
Raleigh, NC 27608
Phone: (919) 856-2195
Fax: (919) 856-2244
john.rittelmeyer@disabilityrightsnc.org
jennifer.bills@disabilityrightsnc.org


/s/ Jane Perkins_____
Jane Perkins
N.C. State Bar No. 9993
Jina Dhillon
N.C. State Bar No. 41997
NATIONAL HEALTH LAW PROGRAM
101 E. Weaver Street, Ste. G-7
Carrboro, NC 27510
Telephone: (919) 968-6308
perkins@healthlaw.org

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served a true copy of Plaintiffs' MOTION FOR TEMPORARY RESTRAINING ORDER and supporting MEMORANDUM OF LAW, SUPPLEMENTAL DECLARATIONS OF RACHELLE S., PENNY C, and AFRICA HEATH, and DECLARATIONS OF BONNIE WEST and WYNDIE STITT upon the Defendant's attorneys via electronic means through the CM/ECF system to:

Belinda Smith and Iain Stauffer, N.C. Department of Justice

Stephen D. Martin and Wallace C. Hollowell, Nelson, Mullins, Riley and Scarborough

Rabotteau T. Wilder, Womble, Carlyle, Sandridge, and Rice

This the 20th day of December, 2011.


/s/Douglas Sea
Douglas Sea