IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CV-354-FL


| | | |
|---|---|---|
| L.S., a minor child, by and through his father and next friend, Ron S.; K.C., a minor child, by and through his mother and next friend, Africa H.; ALLISON TAYLOR JOHNS; and D.C., a minor child, by his mother and next friend, Penny C.; | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| M.S., a minor child, through his parent and natural guardian, Rachelle S., | ) ) ) | |
| Intervenor Plaintiff, | ) ) ) | ORDER |
| v. | ) ) | |
| ALBERT A. DELIA,[1] in his official capacity as Secretary of the Department of Health and Human Services; PAMELA SHIPMAN, in her official capacity as Area Director of Piedmont Behavioral Health Care Area Mental Health, Developmental Disabilities, and Substance Abuse Authority; and PIEDMONT BEHAVIORAL HEALTHCARE AREA MENTAL HEALTH, DEVELOPMENTAL DISABILITIES AND SUBSTANCE ABUSE AUTHORITY doing business as PBH, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

---

[1] On March 12, 2012, former defendant Lanier M. Cansler filed notice with the court that defendant Albert A. Delia is now the acting secretary of the North Carolina Department of Health and Human Services. On March 16, 2012, the court entered order that defendant Delia shall be substituted as the state defendant. See Fed. R. Civ. P. 25(d) (providing for automatic substitution of public officers).

This matter comes before the court on plaintiffs' motion for preliminary injunction (DE # 31) and first motion to certify class (DE # 34). Defendant Albert A. Delia ("defendant Delia") filed response in opposition and defendants Pamela Shipman ("defendant Shipman") and defendant PBH also filed response in opposition. Plaintiff filed separate replies to both responses. On March 7, 2012, plaintiffs were granted leave to file supplemental declarations. Defendants were also granted leave to supplement their filings accordingly. Plaintiffs filed a second reply. In this posture, the issues raised are ripe for ruling. For the following reasons the court grants plaintiffs' motions.

## STATEMENT OF THE CASE

Plaintiffs filed complaint as putative class action on July 5, 2011 against defendants. Plaintiffs allege violation of due process protections with respect to alteration of Medicaid benefits and seek preliminary and permanent injunctions. On July 12, 2011, the court entered order denying plaintiffs' motion for temporary restraining order, which motion was lodged in the complaint. On August 24, 2011, plaintiffs filed the instant motion for preliminary injunction. On August 29, 2011, plaintiffs filed the instant motion to certify class.

On September 6, 2011, the court stayed the time for defendants to file responses to the motions for preliminary injunction and class certification pending ruling on plaintiffs' motion to disqualify counsel, filed August 23, 2011.

On October 20, 2011, plaintiff intervenor M.S. filed motion to intervene and complaint in intervention, which motion the court allowed on December 5, 2011, in order lodged on the docket at entry 67.

Plaintiffs filed second motion for temporary restraining order on December 20, 2011, which motion was denied on December 28, 2011. On January 6, 2012, the court held administrative

telephonic conference with the parties (excepting former counsel for defendants Shipman and PBH from Womble Carlyle). Briefing schedule for the instant motions was memorialized and deadlines were set, including date for oral argument.

Upon review of the briefs filed in support of the instant motions, however, the court entered order on March 7, 2012, dispensing with oral argument. In same order, the court granted plaintiffs' motions for leave to filed supplemental declarations in support of the instant motions, and allowed defendants seven days to supplement their own responses, which they did. Plaintiffs filed second reply. The court has considered all of the filings in its determination of the instant motions.

## BACKGROUND

The named plaintiffs are Medicaid recipients, four minors and one adult, who have chronic and disabling conditions. Although plaintiffs' conditions are serious enough to qualify them for institutional placement, they can thrive in stable home environments with adequate support. The North Carolina Innovations Waiver ("Innovations Waiver") is a Home and Community Based Waiver, approved under 42 U.S.C. § 1396n of the Medicaid Act, that offers Medicaid services to individuals like plaintiffs with developmental disabilities who would otherwise qualify for services in an institutional facility. The program is called a waiver because the federal Medicaid agency has given North Carolina permission to ignore certain otherwise mandatory provisions of the Medicaid Act. All members of the putative class are consumers of services under the Innovations Waiver. The Innovations Waiver currently has approximately 675 total participants. Pls.' Mem. Supp. Mot. Prelim. Inj. 5.

The North Carolina Department of Health and Human Services ("NCDHHS") is the single state agency designated to administer or supervise the administration of the state's Medicaid

program under Title XIX of the Social Security Act. 42 U.S.C. § 1396a(a)(5); N.C. Gen. Stat. § 108A-54. The NCDHHS's division of medical assistance ("DMA") is responsible for the day to day administration of the Medicaid program. Defendant Delia is the head of the NCDHHS.

Defendant PBH is a multi-county area mental health, developmental disabilities, and substance abuse authority. Defendant Delia contracts with defendant PBH to perform certain functions in operating the Innovations Waiver. Defendant PBH is a local management entity ("LME"), which is defined by statute as a local political subdivision of the states. See N.C. Gen. Stat. § 122C-116(a). Defendant PBH is the LME for Davison, Rowan, Cabarrus, Union, and Stanley counties.[2] Defendant PBH operates as a managed care organization ("MCO") under the Medicaid regulations, and defendant Pamela Shipman is its chief executive officer.

The DMA entered into a contract with defendant PBH to arrange for and manage the delivery of services and perform other waiver operational functions through its prepaid inpatient health plan ("PIHP") for Medicaid recipients in its area. Defendant PBH manages the PIHP through which all mental health, developmental disabilities and substance abuse services are authorized for Medicaid. Def. Delia's Resp. Opp'n Mot. Prelim. Inj. 4.

Under the Innovations Waiver, participants meet with a PBH employee, called a care coordinator, once every twelve (12) months to develop a service plan of care, which specifies the services requested to be authorized for the next twelve (12) month period. The plan is then submitted to a PBH employee in the Utilization Management section for approval or denial. Once approved, the participants twelve-month plan takes effect on the first day of the participant's month of birth. Services under the waiver are authorized by PBH for one year when the annual plan of care

---

[2] Supplemental declarations offered by plaintiffs suggest that the number of counties has increased.

is approved, although mid-year modifications can be requested if a participant's needs change.

Of particular importance is the process defendant PBH has used and is using to impose reductions to certain participants' budgets. As part of the Innovations Waiver approved by the Centers for Medicare and Medicaid Service ("CMS"), there was a change in the method used by defendant PBH to assess the needs of program participants. The new program utilized a model called the support needs matrix ("SNM"). Under the SNM, employees of defendant PBH conducted evaluations using a "support intensity scale" ("SIS"). Defendants contend that the SIS is a valid way to assess a participant's support needs.[3] The SNM establishes funding categories for participants. The categories are based on various factors, including where a participant lives, his or her age, his or her assessed support needs, and safety risk. Within the SNM, there are different groupings based on where a participant lives (at home or in an institution), which also factor into the base budget. The SNM groupings and categories into which a participant falls determine the specific dollar amount of that participant's base budget. A participant can also receive non-base budget services in a year. The combination of base budget and non-base budget services cannot exceed $135,000 per year. PBH procedure permits an individual to ask for the SIS assessment to be amended within ninety (90) days of the assessment.

In March 2011, defendant PBH issued undated form letters to plaintiffs and other participants, informing them that they had been assigned to one of twenty-eight (28) categories of need using the SNM system, a score based primarily on scores determined by the SIS assessment. The March 2011 letter informed that the assignment to a category would result in new, maximum

_____

[3] Plaintiffs do not challenge the SNM or SIS; rather they challenge the use and application of both without notice and opportunity for hearing to contest the same. Thus, the systems themselves are not at issue here, but rather the use of these systems and whether or not such use comports with the requirements of federal law and due process.

5

dollar limits for the individual's services.  For some participants, the letter informed that the new budget limit would be in effect beginning July 1, 2011.  The letter instructed each participant to contact his or her PBH care coordinator to revise the already approved plan of care, in most cases before July 1, 2011, to reduce or modify services to make them fit within the new budget limit.

The March 2011 letter contained no information about the right to appeal defendant PBH's decision.  Penny C. Decl. Exh. B; Holzlohner Decl. Ex A.  Plaintiffs also contend that defendant PBH's care coordinators repeatedly informed plaintiffs and others that the SIS scores and resulting assigned SNM categories and new budgets could not be challenged or appealed. See, e.g., Penny C. Decl. ¶ 31, Ron S. Decl. ¶¶ 16, 31; Supp. Decl. of Rachelle S. ¶ 8. Defendants dispute this, contending that care coordinators informed participants of their options, including the option of seeking an intensive review.  Decl. of Nicole Cote ¶¶ 10-13.

Plaintiffs contend that the summary mailed to participants did not include an explanation of the scoring system or an adequate explanation of the import of the score and what it meant for a participant's services. The March 2011 letter was accompanied by a booklet of general information. Pages 11 to 13 of the booklet include a description of a process by which a Innovations Waiver participant could request an "intensive review."  Defendants describe intensive review as a process for participants who "believe that they have support needs which make them outliers as opposed to others in their Support Needs Matrix category."  Def. PBH's Resp. Opp'n Mot. Prelim. Inj. 3. Defendants contend that if a participant wanted to pursue an intensive review, the care coordinators assisted the participant to gather the necessary documentation, complete the request, and submit the request to the intensive review committee. (Id.) Plaintiffs, however, contend participants could only request an internal paper review by a PBH committee, and that intensive review was limited to a

small number of outliers. Plaintiffs further argue that contrary to defendant PBH's representation, care coordinators repeatedly failed to inform participants and their providers of the option for intensive review or discouraged them from requesting such a review. See, e.g., Decl. of Penny C. ¶ 35; Decl. of Patricia Holzlohner ¶ 17.

Defendants dispute plaintiffs' allegations of defendant PBH employees discouraging appeals, and also describe other methods by which a participant in the Innovations Waiver can appeal a budget reduction and receive additional services. Defendants note that participants can formally request services through a Treatment Authorization Request ("TAR"). Service authorizations under a TAR are issued for specific services and for limited duration. If defendant PBH denies a service request in a TAR, the participant is given notice of his or her appeal rights.

A participant's planning team may also submit a TAR for base budget services that exceed the base budget for the participant's SNM category. In these cases, defendant PBH will authorize the services and amounts that coincide with the SNM, and deny the services that do not. Defendants contend that participants are given notice of their appeal rights upon denial. The appeal process first consists of an appeal to defendant PBH, called a Reconsideration Review. If further appeal is desired, the next level is the North Carolina Office of Administrative Hearings ("NCOAH").[4]

Plaintiffs accuse defendants of engaging in practices that reduced and terminated Medicaid services with no written notice or right to a hearing. Specifically, plaintiffs accuse defendant PBH and its employees of: (1) routinely informing participants and providers that their SNM category

---

[4] At least one named plaintiffs, Allison Johns, and one proposed plaintiff, Kimberly Beare, appealed reductions in their base budgets to the NCOAH. However, both claimed they only navigated the appeal system with the assistance of their lawyers. Both contend that upon the initial notification from defendant PBH that their budgets were reduced, neither were provided with appeal rights. See Decl. of Linda Johns ¶¶ 11, 15; Decl. of Patricia Holzlohner ¶¶ 13-14, Exhs. A, B.

cannot be appealed; (2) pressuring participants or their guardians into signing a new plan of care that does not meet the needs of the recipient, even though the previously approved plan should still be in effect; (3) informing participants that if a new plan reducing services was not signed, all waiver services would end; (4) informing participants that the SIS score could not be contested unless it was challenged within ninety (90) days, even though the SIS report contained no notice of appeal; (5) informing participants that they could not request an intensive review unless they waited six months or otherwise discouraging them from making the request; and (6) suggesting to participants that if they did not change their plans and reduce services, they would run out of money and services would stop entirely. Plaintiffs offer declarations of plaintiffs or their guardians to support each of these allegations, and supplemented many of those same affidavits which reiterate the same. Defendants deny the allegation, and contend that defendant PBH employees communicated certain ways to contest the SIS scores and SNM categorization, though at least one employee acknowledges communicating that the SNM category could not be appealed. See Decl. of Melissa Campbell ¶ 8.

Plaintiffs also contend that the practices described above are ongoing. While at least two of the named plaintiffs have received notification from defendant PBH in 2012 that their SNM category has changed, resulting in higher budgets to become effective in March 2012, plaintiffs contend that defendants' practice of depriving participants of due process when budgets are reduced continues. Plaintiffs contend that reductions in their budgets over the past year have caused significant hardships, including behavioral regression, emotional and mental anguish from the same, and a fear that plaintiffs will be institutionalized. See Decl. of Amie C. ¶ 27; Decl. of Laurie Haley ¶ 23.

8

**DISCUSSION**

A.     First Motion for Class Certification

     1.     Standard of Review

Rule 23 sets forth the requirements that plaintiffs must satisfy to be permitted to represent

a class. Fed. R. Civ. P. 23(a).  First, a plaintiff must show that "(1) the class is so numerous that

joinder of all members is impracticable; (2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the

class; and (4) the representative parties will fairly and adequately protect the interests of the class."

Id.  Additionally, plaintiffs seeking class certification must also satisfy one of the requirements in

Rule 23(b).  Plaintiffs bear the burden of proving the requirements of Rule 23, Thorn v. Jefferson-

Pilot Life Ins. Co., 445 F.3d 311, 317 (4th Cir. 2006) (internal citations omitted), and only one

plaintiff must have standing with respect to each claim.  Village of Arlington Heights v. Metro.

Hous. Dev. Corp., 429 U.S. 252, 264 (1977).

Here, plaintiffs contend they satisfy both the requirements of Rules 23(a) and 23(b)(2), which

provides that class certification is appropriate where "the party opposing the class has acted or

refused to act on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief with is appropriate respecting the class as a whole."  Fed. R. Civ.

P. 23(b)(2).  The putative class is defined by plaintiffs as

> All current or future participants in the N.C. Innovations Waiver, as it is currently
> or subsequently named, whose Medicaid services have been or will be denied,
> reduced, or terminated by Defendant Secretary of the [NCDHHS], Defendant PBH,
> or any of their employees, contractors, agents or assigns, through the implementation
> of the [SIS] or [SNM]

Pls.' Mot. Class Certification 1.  Defendants PBH and Shipman argue that plaintiffs' proposed class

9

definition is unclear. The court disagrees. Plaintiffs make clear that the class includes those participants in the Innovations Waiver whose services will be "denied, reduced, or terminated." The proposed class does not include persons whose services are increased.

The court also finds defendant PBH's and defendant Shipman's arguments against class certification because of finite resources to be similarly unavailing. Defendant PBH acknowledges that its contract with the NCDHHS results in its assumption of the risk. "PBH's operation as a PIHP means that PBH is pre-paid by the State to provide care, and PBH accepts the financial risk for providing that care." Defs. PBH and Shipman Resp. Opp'n Class Certification 3. Defendants PBH and Shipman cite no authority to support the implication that because they have a finite amount of funds, they do not have to alter conduct that is in violation of federal law and due process. Inadequate appropriations does not excuse compliance with the Medicaid Act. Ala. Nursing Home Ass'n v. Harris, 617 F.2d 388, 396 (5th Cir. 1980); Smith v. Benson, 703 F.Supp.2d 1262, 1277 (S.D. Fla. 2010) ("[N]either the gravity nor the difficulty of funding Medicaid obligations . . . excuse a violation of federal law."); Bontrager v. Indiana Family and Soc. Servs. Admin., __ F.Supp.2d __, 2011 WL 5386646 at *16 (N.D. Ind. 2011) (citing Smith); Benjamin H. v. Ohl, 1999 WL 34783552 at *14 (S.D.W.Va. 1999). Without any legal support for this position, the court declines to engage in a factual analysis of whether or not defendant PBH actually has a certain amount of funds, or how it manages its funds.

Defendants PBH and Shipman next argue that the named plaintiffs do not have standing to bring this action. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The court first addresses the standing issue, as it is a jurisdictional requirement.

10

2. Standing

Standing is the determination of whether a particular individual is the proper party to assert a claim in federal court; it "is founded in concern about the proper-and properly limited role-of the courts in a democratic society." <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975). The standing doctrine curtails the types of disputes that an Article III court can decide; it does so by requiring courts to hew to their express constitutional mandate of resolving "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1; <u>Warth</u>, 422 U.S. at 498. The standing question is one that asks "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." <u>Id.</u> An affirmative answer to this question requires a plaintiff to demonstrate at least three minimum constitutional requirements: (1) that the plaintiff has suffered an "injury in fact" - an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of - the injury has to be fairly traceable to the defendant; (3) it must be likely, not speculative, that the injury will be redressed by a favorable decision. <u>Lujan</u>, 504 U.S. at 560-61.

Named plaintiffs who represent a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." <u>Doe v Obama</u>, 631 F.3d 157, 160 (4th Cir. 2011) (citations omitted). Thus, before the court engages in the Rule 23 analysis, it must determine that the named plaintiffs have standing.

Defendants PBH and Shipman initially suggest that no plaintiff raises a cognizable claim and thus no class can be certified as to any claim. Defendants PBH and Shipman incorporate their arguments raised in opposition to the motion for preliminary injunction to argue that plaintiffs assert

no cognizable claims. For the reasons discussed *infra*, the court disagrees, and finds that a cognizable claim is set forth as to each of plaintiffs' three claims.

The bulk of defendant PBH's and defendant Shipman's argument that plaintiffs do not have standing, however, is that named plaintiffs' claims are moot. Specifically, defendants PBH and Shipman contend that K.C.'s, L.S.'s, and Allison Taylor Johns's previous authorizations expired in the last six months of 2011, which mooted their claims. Additionally, defendants PBH and Shipman contend that D.C. and M.S. are both receiving increases in their budgets as a result of category changes resulting from a more recent SIS evaluation.

The court finds these arguments to be unpersuasive and contrary to case law. As to the contention that plaintiffs K.C., L.S. and Allison Johns no longer have ripe claims because their authorization periods expired, the court addresses similar argument later in this order, and references the same here. See *infra* Part B.1. The expiration of those plaintiffs' prior authorizations has no bearing on the ripeness of their constitutional claims that defendants provided them with no notice or opportunity for hearing when, during their authorization periods, their previously authorized budgets were reduced without notice or opportunity for hearing.

As to the argument that because D.C. and M.S. will receive increases in their budgets sometime in the future, the court finds this reasoning similarly unavailing and finds that "Defendant[s] [do] not challenge . . . whether the named Plaintiffs had standing at the commencement of this suit, but appear[] rather to be contending that the claims of some of the named Plaintiffs are, in light of subsequent actions by Plaintiffs and Defendants now moot." Pashby v. Cansler, __ F.R.D. __, 2011 WL 6130819 at *6 (E.D.N.C. 2011). Such a position is contrary to established law. Mootness does not result from a defendant's voluntary cessation of allegedly illegal

conduct.  United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953); see also City of Memphis v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982).  Additionally, in increasing D.C.'s and M.S.'s services in 2012, defendants make no assertion that the future use of the SIS and SNM resulting in decisions to reduce participants' services will comply with federal law and due process.  See Pashby at *7.  Accordingly, all named plaintiffs, including D.C. and M.S., continue to face reduction of their authorized services without due process guarantees of notice and hearing.  See Doe v. Kidd, 501 F.3d 348, 354 (4th Cir. 2007); Peter B. v. Sanford, No. 6:10-CV-00767, 2011 WL 824584 at *1 (D.S.C. March 7, 2011).

The court agrees with plaintiffs that the named plaintiffs continue to have live claims because all are participants in the Innovations Waiver and thus all are subject to the SNM and the SIS, and the use of these indexes for determining services.  It is the use of these indexes to reduce plaintiffs' services without notice or hearing that is challenged in this case, not whether in a few months time, some plaintiffs might get more services than they currently have.  Because defendants assert the legality of the processes for reducing services, the case falls under the class of cases in which a defendant's alleged wrong is capable of repetition yet currently evading review.  See Kidd, 501 F.3d at 354.  Accordingly, the court finds the named plaintiffs have standing to challenge the adequacy of the notice and opportunity for hearing allegedly denied them when their services were reduced in 2011.

3.     Rule 23

Having determined the named plaintiffs have standing to bring the instant suit, the court turns its attention to whether plaintiffs have satisfied their burden under Rule 23.  As noted above, the requirements of Rule 23(a) are: numerosity of parties, commonality of factual or legal issues,

typicality of claims and defenses of class representatives, and adequacy of representation. Thorn, 445 F.3d at 318. This court has "wide discretion whether or not to certify a proposed class." Central Wesleyan College v. W.R.Grace & Co., 6 F.3d 177, 185 (4th Cir. 1993).

      a.     Numerosity

There is no specified or minimum number of plaintiffs needed to maintain a class action. Brady v. Thurston Motor Lines, 726 F.2d 136, 145 (4th Cir. 1984). Additionally, where the relief sought for the class is injunctive and declaratory in nature, more speculative representations as to the size of the class suffice as to the numerosity requirement. Doe v. Charleston Area Med. Ctr., Inc., 529 F.2d 638, 645 (4th Cir. 1975). Defendants do not dispute the numerosity requirement here. Plaintiffs' contention that the class is composed of at least 169 persons is supported by the evidence of record and plaintiffs' description of the proposed class, and the court finds the numerosity requirement met.

      b.     Commonality, Typicality, and Adequacy of Representation

"[T]he final three requirements of Rule 23(a) tend to merge, with commonality and typicality serving as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 147 (4th Cir. 2001) (internal quotations and citations omitted). Rule 23(a)(2) does not require that all factual or legal questions raised be common, so long as there is at least one common question of law or fact. See Walmart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2556 (2011).

As discussed above, the court finds the proposed class to be sufficiently defined as to include only those Innovations Waiver participants whose services were reduced. Defendants' arguments

that the commonality requirement cannot be satisfied because of the competing interests of class members whose services were not reduced is without merit.[5]

Defendant PBH's and defendant Shipman's arguments that class counsel have conflicts of interest which would impact their ability to represent the proposed class is similarly not well taken where this argument is premised solely on the assumption that the proposed class includes participants whose services were not reduced. As such, the court finds no apparent conflict of interest in the proposed class counsel.

Finding defendant PBH's and defendant Shipman's arguments as to the Rule 23(a) factors to be unavailing, the court proceeds to analyze whether plaintiffs' claims satisfy the commonality, typicality, and adequacy of representation requirements. The court finds that all three requirements are met. The requirement of commonality can be satisfied by just a single common question of law or fact. Id. Yet the common contention must be capable of class-wide resolution so that a "determination of its truth or falsity will resolve an issue central to the validity of each one of the claims in one stroke." Id. at 2551. The typicality requirement mandates that the representative must demonstrate that his claims arise from the same practices and are based in the same theory of law as the claims of the class. Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 340 (4th Cir. 1998).

The court finds that all of the named plaintiffs' claims arise from the same legal theory and

---

[5] Defendants place particular emphasis on the alleged conflict of interest between D.C. and M.S. and the rest of the proposed class because defendants submit that these plaintiffs will soon be receiving increases in their funds. However, as discussed in the context of defendants' allegations regarding standing, a claim is not mooted because defendants alter allegedly illegal conduct. Grant, 345 U.S. at 632. As noted by plaintiffs, even if D.C. and M.S. do receive increases in the spring of 2012, they still may face reductions in service in the future and would still lack the due process protections to challenge the same. Defendants' citation to Gen. Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Comm'n, 446 U.S. 318, 331 (1980) is unhelpful where this case is factually distinguishable from an employment case where employers and employees could reasonably be expected to have competing interests as opposed to this case one where all plaintiffs are subject to the SIS and SNM and reductions in services.

the same factual circumstances as those of the class: the named plaintiffs and class members live in the PBH catchment areas, are eligible for Medicaid services through the Innovations Waiver, and had services authorized prior to July 1, 2011, that were reduced based on application of the SNM and the SIS. Common questions of law include whether violations of the Fourteenth Amendment to the United States Constitution occurred through the use of the SIS and subsequent alleged lack of notice and opportunity for hearing after services were reduced, and whether federal law also was violated by the lack of notice and opportunity for hearing. Any differences among the named plaintiffs and class members are minor and do not disturb the similarities noted above. Ultimately, the claims of the named plaintiffs are "so interrelated" that the interests of the class members will be fairly and adequately protected. Lienhart, 255 F.3d at 147.

Lastly, the court finds that the adequacy of representation requirement is met. Where the Fourth Circuit has two requirements for this element to be met—that the named plaintiffs do not have antagonistic interests to the class, Barnett v. W.T. Grant. Co., 518 F.2d 543, 548 (4th Cir. 1975), and that there is adequate counsel, Central Wesleyan Coll. v. W.R. Grace & Co., 6 F.3d 177, 183 (4th Cir. 1993), both requirements are met. See Woodward v. Online Information Servs., 191 F.R.D 502, 506 (E.D.N.C. 2000). The court has previously discussed why it finds that the named plaintiffs' interests are not antagonistic to the class. As to the adequacy of representation, where the only challenge to the same is defendant PBH's and defendant Shipman's arguments that a conflict of interest exists, which argument was rejected, the court sees no reason why proposed counsel, each with extensive experience in this particular area of the law, are not adequate to represent the interests of the class.

16

c.        Rule 23(b)(2)

Finding the Rule 23(a) requirements to have been satisfied, the court moves to defendant Delia's argument that plaintiffs have failed to satisfy this requirement.[6] Defendant Delia asserts that the nature of the claims or relief in this case are such that certifying a class action would be unnecessary, inappropriate, and unduly burdensome. Defendant Delia raises the "necessity argument." That argument suggests that where the relief being sought can be fashioned in such a way so that it will have the same purpose and effect as a class action, certification of a class is inappropriate. See Gray v. Int'l Broth. Of Elec. Workers, 73 F.R.D. 638, 640-41 (D.D.C. 1977). In support, defendant Delia cites older cases, none of which are controlling authority for this court.

Additionally, the court finds plaintiffs' argument well taken that the necessity argument contradicts the language of recent Supreme Court precedent. "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." Wal-mart Stores v. Dukes, __ U.S. __, 131 S.Ct. 2541, 2557 (2011). As such, the court finds no need to address defendant Delia's arguments regarding government good faith. The case is one which, under the language in Dukes, a single injunction or declaratory judgment would provide relief to the entire class proposed by plaintiffs. Defendants do not argue to the contrary.

Accordingly, having found that the requirements of Rule 23 are met, the court, in its discretion, grants plaintiffs' motion to certify the class. Counsel requesting to be appointed as class counsel in plaintiffs' motion for class certification lodged on the docket at entry 34 are appointed pursuant to Fed. R. Civ. P. 23(g).

---

[6] Defendants PBH and Shipman lodge no argument that plaintiffs' failed to satisfy the requirements of Rule 23(b)(2).

B.      Motion for Preliminary Injunction

1.      Standard of Review

"A preliminary injunction is an extraordinary and drastic remedy."  Munaf v. Geren, 553

U.S. 674 (2008) (citations omitted).  A movant must establish each of four elements before a

preliminary injunction may issue: (1) he is likely to succeed on the merits; (2) he is likely to suffer

irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and

(4) an injunction is in the public interest.  Winter v. Nat. Res. Def. Counsel, Inc., 555 U.S. 7, 20

(2008); Real Truth About Obama Inc. v. Fed. Election Comm'n, 575 F.3d 342, 347 (4th Cir. 2009).

Defendants PBH and Shipman contend that the correct legal standard to be applied is the

stricter standard required for mandatory preliminary injunction.  Mandatory preliminary injunctions

do not preserve the status quo and are only granted in very specific circumstances, usually only

when extreme or serious damage will result.  See E. Tenn. Nat. Gas Co. v. Sage, 361 F.3d 808, 828

(4th Cir. 2011); Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980).  Defendants PBH and

Shipman argue that the relief plaintiffs seek would change the status quo since each of the plaintiffs

currently receives services specifically authorized by defendant PBH for specific periods of time.

Def. PBH Resp. Opp'n Mot. Prelim. Inj. 5.

Plaintiffs, except plaintiff Johns, seek a preliminary injunction to restore their services to the

level authorized the day before the instant suit was filed, thus June 30, 2011, and an order preventing

further reductions until a final ruling by this court.  As to plaintiff Johns, since she was told her

services would stop on October 31, 2011, she seeks a preliminary injunction to prevent defendants

from terminating or reducing her services as of that date.

As plaintiffs note in their reply, the basis of their motion for preliminary injunction is that

their services, to which they were entitled for an authorization period of one year, were cut short in the middle of the authorization period, thus the status quo would be the amount of services to which they believe they were entitled for the authorization period that was cut short July 1, 2011. The same argument applies to plaintiff Johns, with the exception that the status quo of her benefits is what she received prior to October 31, 2011, when defendant PBH stated her services would be terminated.[7] Thus, the court finds plaintiffs seek a preliminary injunction to restore the status quo as it was on July 1, 2011, and the stricter standard for a mandatory preliminary injunction is not applicable.

2.      Analysis

Several general issues must be addressed before the court analyses the specific merits of plaintiffs' motion for preliminary injunction.

First, the findings set forth herein apply to all defendants. The court rejects defendant Delia's argument in his response in opposition to plaintiffs' motion for preliminary injunction that plaintiffs do not allege direct action by him or that plaintiffs are alleging an impermissible form of *respondeat superior* liability. Def. Delia's Resp. Opp'n Pls.' Mot. Prelim. Inj. 7. As the head of the single state agency responsible for administering the Medicaid program in North Carolina, NCDHHS, defendant Delia remains accountable for the administration of the Medicaid program through contracts with defendant PBH. This finding is supported in the case law cited by plaintiffs. See McCartney v. Cansler, 608 F.Supp.2d 694 (E.D.N.C. 2009); DTM v. Cansler, 382 F. App'x 334, 338 (4th Cir. 2010) ("where injunctive, as opposed to monetary relief is sought, no 'direct and

_____

[7] Plaintiffs cite some authority suggesting that the distinction defendants PBH and Shipman appear to make here, between the services plaintiffs are now entitled to, now that the authorization periods in effect on July 1, 2011, have expired, and the authorization services they were entitled to on June 30, 2011, is a distinction without a difference. See Jonathan C. v. Hawkins, 2006 WL 3498494 at *12 (E.D.Tex. 2006).

personal involvement is required in order to hold high-level officials responsible for the actions of subordinates and to subject them to the equitable jurisdiction of the court.") (citations omitted). As such, the findings set forth herein apply to all defendants, including defendant Delia.[8]

Second, defendants PBH and Shipman suggest in their response in opposition that plaintiffs' motion for preliminary injunction does not touch plaintiffs' first claim for relief in the complaint, which alleges violation of due process for non-arbitrary standards. Plaintiffs oppose this position, arguing that their first claim is based on defendant PBH's failure to disclose how SIS scoring or the support needs matrix categorization works. Plaintiffs' memorandum in support of the motion for preliminary injunction does address the issues raised in this first claim; specifically, that defendant PBH's use of the support needs matrix and corresponding SIS number was not explained to participants, nor was the import of the score explained to illuminate for participants what it meant for them. See Pls. Mem. Supp. Mot. Prelim. Inj. 7. The discussion of the first prong of the preliminary injunction standard, whether or not plaintiffs are likely to succeed on the merits, addresses this issue, and as such, the court finds that plaintiffs' motion for preliminary injunction applies to all three claims for relief as set forth in the complaint.

Third, the court notes that defendants, in their respective responses in opposition to the motion for preliminary injunction, suggest that the court has already addressed the merits of plaintiffs' motion in its denial of plaintiffs' motions for temporary restraining order, the first filed in the original complaint and the second filed in late December 2011. As the court's orders

_____

[8] The court agrees with plaintiffs that defendant Delia's reliance on Clark v. Keller, 2011 WL 3664296 (E.D.N.C 2011) is unavailing. Clark involved a prisoner's § 1983 claims against two supervisory officials in the North Carolina Department of Correction. The prisoner's claims were based on a theory of *respondeat superior*, and alleged the officials were liable through that theory for the actions of unit physicians at a correctional facility. The case is factually and legally distinguishable from the present one.

addressing both motions for temporary restraining order noted, the court found the extraordinary remedy sought in those motions to be inappropriate without a thorough consideration of both sides' arguments as to the motion for preliminary injunction. The court did not consider the merits of the argument presented in plaintiffs' motion for preliminary injunction before the motion was ripe. Thus, contrary to what defendants assert, the court has not considered and found deficient plaintiffs' arguments as to either the motion for preliminary injunction or motion for class certification.

a.      Likelihood of Success on Merits

Plaintiffs have demonstrated a likelihood of success on the merits. Title XIX of the Social Security Act establishes the Medicaid program. 42 U.S.C. §§ 1396-1396w-5. State participation in the Medicaid program is voluntary, and participating states are reimbursed by the federal government for a majority of the costs of Medicaid benefits. § 1396-1. States that elect to participate must "comply with detailed federally mandated standards." Antrican v. Odom, 290 F.3d 178, 183 n.2 (4th Cir. 2002); 42 U.S.C. § 1396a. If a participating state fails to comply with federal standards, the Secretary of the United States Department of Health and Human Services may withhold funding from the state until it brings its plan back into compliance with those standards. Id.; 42 U.S.C. § 1396c. The Medicaid Act requires participating states and managed care entities to provide each Medicaid recipient with adequate written notice and an opportunity for an impartial hearing before services are denied, reduced or terminated. §§ 1396a(a)(3) and 1396u-2(a); 42 C.F.R. §§ 431.200 and 438. North Carolina has elected to participate in Medicaid. See N.C. Gen. Stat. §§ 108A-54, 108A-56. The NCDHHS is the single state agency required to ensure that Medicaid rules are followed. Id. § 108A-71.

As the head NCDHHS, defendant Delia heads the single state Medicaid agency which directly oversees the Innovations Waiver and ensures that Medicaid rules are followed. Federal

approval specifies that defendant Delia must provide the opportunity for a fair hearing pursuant to federal regulations, 42 C.F.R. § 431.200 subpart E, to every waiver participant whose services are denied, suspended, reduced, or terminated. 42 C.F.R. § 431.200(a). Defendant PBH, as a managed care organization contracting with NCDHHS, must also provide the individual with proper written notice of his or her right to appeal a decision as provided in the federal regulations. 42 C.F.R. §§ 438.404(b).[9]

Defendants' primary argument turns on whether or not defendant PBH has undertaken an agency "action" requiring enrollees to have opportunity for fair hearing. Defendants argue that because PBH operates as a PIHP, the applicable regulations for managed care entities in 42 C.F.R. § 438 only require notice and opportunity for fair hearing when the PIHP has taken an "action," and that defendant PBH has not taken such action. The regulations define agency "action" as:

> In the case of a MCO[10] or PIHP -
>
> (1)    The denial or limited authorization of a requested service, including the type or level of service;
> (2)    The reduction, suspension, or termination of a previously authorized service;

42 C.F.R. § 438.400(b).[11]

---

[9] Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 *et seq.* on behalf of other Medicaid recipients similarly situated. The parties do not dispute that § 1983 imposes liability of anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Because § 1983 does not itself create a federal right, a plaintiff will prevail under § 1983 only if he is able to demonstrate the violation of a statute or federal constitutional provision that confers a right intended to be enforceable by a private cause of action. Golden State Transit Corp. v. Los Angeles, 493 U.S. 103, 106 (1989). No argument has been lodged that plaintiffs fail to assert a federal enforceable right under § 1983, and the court finds that under the applicable law, plaintiffs have successfully asserted such a right. See DTM et. al v. Cansler, No:7:08-CV-57-H, slip op. at 6-8 (E.D.N.C. March 16, 2009).

[10] A "MCO" is a Managed Care Organization. As defendants explain in their brief, a PIHP like defendant PBH is a type of MCO. Def. PBH Resp. Opp'n Mot. Prelim. Inj. 10.

[11] Additionally, defendants also acknowledge that the regulations require defendant PBH to continue to provide an enrollee with benefits pending the outcome of an appeal involving the "termination, suspension, or reduction of a previously authorized course of treatment," . . . and "the original period covered by the original authorization has not (continued...)

Defendants argue that defendant PBH's notification to participants in the spring of 2011 of budget reductions effective July 2011, does not constitute an "action" because plaintiffs' services have not been terminated; instead, plaintiffs had time-limited authorizations for services that naturally expired.

As to this argument, that defendants have not taken agency action, the court disagrees. Though numerous, lengthy briefs by both sides have to some extent confused the issues of what exactly defendant PBH has done, the court finds that defendant PBH, under defendant Shipman's direction, has taken action that "reduc[ed], suspend[ed], or terminat[ed] . . . a previously authorized service," the previously authorized service being a particular enrollee's authorized services budget for one calendar year. See 42 C.F.R. § 438.400(b). Defendants do not dispute that under the Innovations Waiver, participants meet with their care coordinator once every year to develop a service plan of care, which specified which services were to be authorized for the next twelve-month period. See Pls.' Mem. Supp. Mot. Prelim. Inj. 6; Sea Aff. Exh. B, Att. 1: 7; see, e.g., Decl. Of Penny C. ¶ 13, Exh. F.; Decl. Of Ron S. ¶ 8. One approved, the participant's twelve-month plan of care took effect on the first day of the participant's month of birth. See, e.g., Decl. of Ron S. ¶ 8.

In March 2011, defendant PBH took action that reduced or suspended the participants' previously annually authorized services. See, e.g., Decl. of Ron S. ¶ 9-10 ; Decl. of Penny C. ¶¶ 24,

---

[11](...continued)
expired." See 42 C.F.R. § 438.420(b). Because the court grants plaintiffs' motion for preliminary injunction and orders that defendants reinstate the level of services authorized to plaintiffs prior to July 1, 2011, until the court issues a final ruling, it need not decide the issue of whether, under § 438.420(b), plaintiffs are entitled to benefits pending their appeal in spite of the language suggesting that benefits pending appeal are only authorized if the "original period covered by the original authorization has not expired." See 42 C.F.R. § 438.420(b)(4). Plaintiffs offer some case law that the benefits should continue despite this language. See Jonathan C, 2006 WL 3498494 at *13-14. However, the issue has not been fully briefed, and is not immediately necessary to be decided in light of the relief granted herein.

23

28, 41.[12]  Thus, participants met with a care coordinator and developed a plan of service under a

certain budget, for a period of a year.  In March 2011, defendant PBH communicated to plaintiffs

that as of July 2011, they must reduce or terminate certain services to comply with "new" budgets,

developed based on the SIS and SNM, neither of which plaintiffs understood or knew how to

challenge.  The court disagrees with defendants that defendant PBH's action was simply taken at

the conclusion of a previously authorized period of service.  Defendants do not offer factual support

for this contention beyond general assertions that the agency "action" in this case is the expiration

of a time-limited authorization to provide a specific service.  See Def. PBH's Resp. Opp'n Mot.

Prelim. Inj. 13.  Defendants do not show how, for instance, the scenario cited above and described

in the declaration of Ron S., is the expiration of a time limited authorization, when defendant PBH

stated that a budget authorized until December 2011, would be reduced in July 2011.  The facts do

not support defendants' argument that defendant PBH did not engage in agency action under the

regulation which triggered notice and appeal rights.[13]  In fact, plaintiffs have offered evidence that

previously authorized budgets were seemingly disregarded in light of the new SNM categories for

plaintiffs, categories reached by application of the SIS, which participants did not understand and

were not clearly told they could contest.[14]

---

[12]  Although the declarations submitted by plaintiffs each describe a similar scenario, by way of example, the declaration of Ron S. states that plaintiff L.S. had an annual approved base budget of $56,197.92, beginning in December 2010 and going through December 2011.  Decl. of Ron S. ¶¶ 8-9.  However, in March 2011, Ron S. received a letter from defendant PBH explaining that L.S.'s new budget would be $36,604.40, beginning July 2011.  Id. ¶ 11.

[13]  In their supplement to the response in opposition to plaintiffs' motion for preliminary injunction, defendants PBH and Shipman lodge a confusing argument that suggests that some plaintiffs' authorized services were only authorized for six-month periods.  However, a closer analysis shows that while some participants' services were approved in "phases," these two six-month phases were based on one annual budget.  Decl of Ron M. (DE # 122) ¶¶ 7-8.  For instance, defendant PBH approved a plan that M.M.'s services from April 2012 through September 2012 would be based on an "annual" budget of $25,476.40, yet in January 2012, defendant PBH stated that the annual budget was reduced to $18,799.60, effective April 1, 2012.  (Id.)

[14]  This practice appears to be ongoing.  See Decl. of Ron M. (DE # 122) ¶¶ 7-9.

Plaintiffs' legal claims include allegations that: (1) defendants use the SIS to determine plaintiffs' level of need without an opportunity for a fair hearing; (2) plaintiffs are assigned to a SNM category and base budget without an opportunity for fair hearing; (3) plaintiffs are denied intensive reviews without opportunity for a fair hearing; and (4) plaintiffs were told they have to sign new plans of care reducing their services and failure to do so would result in all of their services stopping. Defendants contend that none of plaintiffs' legal claims are agency "actions," but rather are part of the "managed care planning process." Def. PBH Resp. Opp'n Pls.' Mot. Prelim. Inj. 19. While each one of these efforts might not be an agency "action" itself under the regulations, the court finds that agency action was taken, often in conjunction with the above mentioned efforts, when plaintiffs were notified that their annual, authorized base budget was no longer effective in July 2011.[15]

Having found that defendants engaged in agency action of terminating or reducing benefits, it follows that plaintiffs were entitled to the notice and appeal rights outlined in the Medicaid regulations, cited above, as well as under general principles of due process. See O'Bannon v. Town Court Nursing Ctr., 447 U.S. 773, 786-87 (1980); Goldberg v. Kelly, 397 U.S. 254, 269-71 (1970); McCartney ex rel. McCartney v. Cansler, 608 F.Supp.2d 694, 699 (E.D.N.C. 2009).[16] The court next turns to whether the notice and appeal requirements of federal law and due process were followed, and finds they were not.

---

[15] This conclusion is underscored by plaintiffs' repeated assertion that they do not challenge the SIS or SNM themselves, rather they challenge the use of the same to unilaterally reduce or terminate a service under a previously authorized budget without due process. While defendants repeatedly raise the cry that what plaintiffs really seek is just to freeze services in place, the court does not agree. It is the opportunity to challenge use of the SIS and SNM to arbitrarily reduce or terminate benefits that plaintiffs seek. Defendant PBH's argument in its supplemental response in opposition to the motion for preliminary injunction (see DE # 149 n.1) is thus inapposite. Granting plaintiffs' motion would not frustrate current due process protections where there appear to be none. Instead, granting plaintiffs' relief would require notice and appeal requirements that comport with federal law and due process to be instituted.

[16] Thus, the court rejects defendants' argument that notice of appeal rights have not "even been triggered." Defs. PBH Supp. Resp. Opp'n Mot. Prelim. Inj. n.4.

Federal regulations require that a managed care provider such as defendant PBH must provide notice and opportunity for hearing when action is going to be taken. See 42 C.F.R. § 438.404, 438.406. The content of the notice must explain seven things: (1) the action the PIHP has taken or intends to take; (2) the reasons for the action; (3) the enrollee's or the provider's right to file a PIHP appeal; (4) if the state does not require the enrollee to exhaust PIHP level appeal procedures, the enrollee's right to request a state fair hearing;[17] (5) the procedures for exhausting the rights specified in the regulations; (6) the circumstances under which expedited resolution is available and how to request it; and (7) the enrollee's right to have benefits continue pending resolution of the appeal, how to request that benefits be continued, and the circumstances under which the enrollee may be required to pay the costs of these services. 42 C.F.R. § 438.404(b).

The requirements for appeal of an agency action are set forth in 42 C.F.R. § 438.406 and include ensuring that the individuals who make decisions on grievances and appeals are individuals not involved in any previous level of review or decision-making, providing the enrollee an opportunity to present evidence and allegations of fact or law in person or in writing, providing opportunity for an enrollee to examine his or her file, and including as parties to the appeal an enrollee and his or her representative. See C.F.R. § 438.406(a) and (b).

Defendants did not satisfy either the notice or appeal requirements. While the SIS score itself is not being challenged, plaintiffs note that the SIS assessments mailed in 2011 did not explain the significance of the score or how to challenge it. Pls. Mem. Supp. Mot. Prelim. Inj. 7. The score summary did not inform participants that failure to challenge it within ninety (90) days would bar future appeals of termination in service. See, e.g., Decl. of Penny C. Ex. B. Participants who

---

[17] The contract between DMA and PBH requires participants to complete defendant PBH's internal review, called a "Reconsideration Review" by defendant PBH before they may continue their appeal in the State fair hearing system. Pls.' Mot. Prelim. Inj. 6 n.2. The reconsideration review process is not at issue in this case.

contested the score were not provided with a fair hearing or appeal, as set forth in the regulations where defendants do not show that any appeal was conducted by a decision maker not involved in any previous level of review or decision-making. See 42 C.F.R. § 438.406(a).

In March 2011, plaintiffs and proposed class members received undated letters from defendant PBH stating that according to the SNM, new budget limits for the participant's category of need would be implemented in July 2011. The letters did not contain information about appeal. Id.; see, e.g., Penny C. Decl. Exhs. B, G, I; Johns Decl. Exh. D. While there was a booklet enclosed with each notice, the booklets contained information about an "intensive review," which defendant PBH has acknowledged only applies to "outliers," the number of which is capped at seven percent. See Def. PBH Resp. Opp'n Mot. Prelim. Inj. 19; Misenheimer Decl. (DE # 42) ¶ 14.[18] Looking at the facts as alleged, and rejecting defendants' argument that no agency action was taken when defendant PBH contacted participants and informed them that their annual budgets would change based on the SNM, the regulations setting forth the notice and opportunity for hearing requirements were not followed.

The court further finds that plaintiffs are likely to succeed on the merits on their claims that the same actions violated plaintiffs' due process rights under the Fourteenth Amendment. Plaintiffs have set forth the applicable law in detail, including the Supreme Court decision in Goldberg, which required that welfare recipients have timely and adequate notice detailing the reasons for proposed termination, that the opportunity to be heard be tailored to the capacities and circumstances of those to be heard, an opportunity to confront and cross-examine the witnesses relied on by the opposing

---

[18] A few plaintiffs did submit a plan of care exceeding their new allotted budget limit, and when defendant PBH denied the same, it did so in writing and included appeal rights. Penny C. Decl. ¶ 40. However, plaintiffs contend that even this notice of appeal rights failed to satisfy due process for failure to adequately explain the reasons for denial. However, the court need not engage in analysis of whether this notice satisfies federal law and due process, having found that the agency action of informing participants of reductions in their annual budgets was an agency action and notice and opportunity for hearing were not provided.

27

side, and an impartial decision maker. 397 U.S. at 268-71. Defendants suggest that <u>Goldberg</u> is inapplicable because no agency action has taken place, a contention the court rejects.[19] Defendants also argue that plaintiffs have no property interest in their services triggering due process rights because defendant PBH is a MCO. This contention is not supported by the case law, and the court finds that plaintiffs have a property interest in the services received under the Innovations Waiver. <u>See</u> <u>J.K. by and through R.K. v. Dillenburg</u>, 836 F.Supp. 694, 700 (D. Ariz. 1993) (treatment decisions by MCO are not exempt from due process concerns).

Because defendants rely on the premise that no agency action has been taken, defendants lodge no meaningful argument that what was provided to participants in the form of the March 2011, adequately complied with the requirements of <u>Goldberg</u>, specifically the need for individualized information a participant can use to determine whether a mistake has been made as well as information regarding participants' right to an impartial pre-termination hearing and how to exercise that right. <u>See</u> <u>Goldberg</u>, 397 U.S. at 266; <u>Mallette v. Arlington Co. Employees' Supp. Ret. Sys.</u>, 91 F.3d 630, 640-41 (4th Cir. 1996). Participants who received notification in spring of 2011 that their annual budget was being reduced because of the SIS score did not understand the score, how the score was reached, and did not have opportunity for a hearing in front of an impartial decision maker.[20]

---

[19] <u>Goldberg</u> is applicable to the instant case because Medicaid recipients have a statutory entitlement to benefits and such entitlement is protected by the due process clause of the Fourteenth Amendment. <u>See</u> <u>O'Bannon v. Town Court Nursing Ctr.</u>, 447 U.S. 773, 787 (1980), a point defendants do not contest.

[20] Defendants make much of the fact that two plaintiffs have successfully appealed their SNM and corresponding budgets. <u>See</u> Def. PBH's Resp. Opp'n Mot. Prelim. Inj. 26-27. Yet affidavits submitted by the representatives of both plaintiffs state that they only proceeded through the appeal process with the help of their lawyers. <u>See</u> Supp. Decl. of Patty Holzlohner ¶ 5; Second Decl. of Linda Johns ¶ 4. The majority of affidavits and sworn statements offered by plaintiffs instead suggest a process in which little to no appeal rights are communicated. Proceeding through the appeal process whether through the intensive review process or by submitting a plan with a higher SNM budget is a process most participants do not understand or cannot complete without the assistance of experienced counsel.

Considering the foregoing, the court finds that plaintiffs have made a sufficient showing of likelihood of success on the merits of their claims that defendants' notification of reduction in services in the spring of 2011 and after violates applicable federal regulations as well as due process.[21]

b. Irreparable Harm

Plaintiffs have also demonstrated irreparable harm. In the absence of an injunction, plaintiffs risk constant re-evaluation pursuant to the SIS and SNM without notice and opportunity to appeal the same. Plaintiffs have submitted multiple affidavits from plaintiffs or from individuals who care for plaintiffs who cite deteriorating and regressive behavior from lack of services, serious financial strain on plaintiffs' families, and for some, the threat of being institutionalized, as a result of reduced budgets since July 2011. While defendants suggest that some plaintiffs are about to enjoy increases in their benefits, without injunctive relief as to the lack of notice and opportunity to appeal, such benefit could be reduced without due process as quickly as it is given.[22] Defendants PBH and Shipman also argue that all plaintiffs know how to exercise their appeal rights. The evidence offered by plaintiffs belies this contention and the court has also previously discussed the great difficulty plaintiffs have demonstrated to actually appeal a reduction in benefits based on the SNM.

---

[21] The court notes that plaintiffs repeatedly allege that employees of defendant PBH actively discouraged participants from exercising appeal rights or communicated that efforts to appeal or seek an intensive review were futile. Pls.' Mem. Supp. Mot. Prelim. Inj. 13-14. Plaintiffs support these allegations with numerous affidavits. Defendants rebut the allegations by offering their own affidavits denying that certain things were said, and this particular aspect of the parties' briefs reveals a factual dispute as to what was said by defendant PBH care coordinators and what was heard by participants and their guardians. The court need not engage in substantial analysis of these factual disputes based on its decisions lodged herein regarding plaintiffs' likelihood of success on the merits, but notes that if plaintiffs' allegation are true, such practices by defendant PBH would be further evidence that the general due process protections in the Medicaid Act and as set forth in the case have been violated. See Goldberg, 397 U.S. at 266-67; Mallette, 91 F.3d 640-41.

[22] Defendant Delia's response in opposition to the motion for preliminary injunction suggests that plaintiffs seek an order from the court "freez[ing] the use of the [SNM]." Def. Delia's Resp. Opp'n Mot. Prelim. Inj. 10. The court does not agree that plaintiffs make this request, finding that plaintiffs contest the application of the SNM without notice and opportunity for hearing to contest it.

Further, where defendants suggest that every plaintiff could simply submit an over-budget request for services, such argument does not change the fact that defendant PBH took agency action when it notified participants that previously authorized services were to be reduced, without providing proper notice and opportunity to appeal. Additionally, plaintiffs have offered evidence that it is defendant PBH's policy to deny such requests to the extent they exceed the budget defendant PBH determines to be appropriate. See Def. PBH's Resp. Opp'n Class Cert. 9. ("[A participant's planning team] may also submit a TAR in which the combination of Base Budget Services and Non-Base Budget Services exceeds the Waiver Cost Limit $135,000 per year. In such scenarios, PBH will authorize the services and amounts which are compliant with the [SNM], or Waiver Cost Limit, and deny those services that are not.") (citing Decl. of Andrea J. Misenheimer ¶ 19). Additionally, plaintiffs have offered evidence, disputed by defendants, that participants were repeatedly told they could not appeal. Supp. Decl. of Rachelle S. ¶ 8 Decl. of Linda Biggs, ¶¶21, 22, 23; Decl. of Laurie Haley, ¶ 15, 16, 20; Decl. of Melissa Campbell, ¶ 8.

Taken as a whole, the serious physical and mental entry or forced entry into an institutional setting for many of the named plaintiffs and members in the class if injunctive relief is not provided constitutes irreparable harm. See, e.g., Mayer v. Wing, 922 F.Supp. 902, 909 (S.D.N.Y. 1996); Crabtree v. Goetz, No. 3:08-0930, 2008 WL 5330506 at *30 (M.D.Tenn. Dec. 19, 20008); Benjamin H. v. Ohl, 1999 WL 34783552 at *13 (S.D. W.Va. July 15, 1999); Peter B. v. Sanford, 2010 WL 5912259 at *9-10 (D.S.C. Nov. 24, 2010).

c.      Public Interest

Finally, plaintiffs have also shown that the balance of equities tips in their favor and that the public interest supports the issuance of an injunction. As noted earlier, where defendants complain of fiscal complications and insufficient funds to comply with relief plaintiffs seek, fiscal concerns cannot be held to outweigh harm to plaintiffs' safety, health, and well-being. See Todd v. Sorrell,

841 F.2d 87, 88 (4th Cir. 1988).

Additionally, the public interest always lies with upholding the law and having the mandates of the Medicare Act and due process enforced. As plaintiffs have shown a likelihood of success o the merits as to these claims, the court finds that an injunction is in the best interest of plaintiffs and the public.

3.     Bond

Plaintiffs request that the court waive any requirement to post a cash bond under Federal Rule of Civil Procedure 65. Rule 65(c) provides,

> The court may issue a preliminary injunction or temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

Fed. R. Civ. P. 65(c). While plaintiffs offer case law from other circuits suggesting that no bond is required here, the language of Rule 65 as well as Fourth Circuit precedent counsel that "[f]ailure to require a bond before granting preliminary injunction relief is reversible error." Maryland Dep't of Human Resources v. U.S. Dep't of Agriculture, 976 F.2d 1462, 1483 (4th Cir. 1992). The computation of the bond amount, however, is within the court's discretion. Id.; Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 421 (4th Cir. 1999). At least two circuits have approved dispensing with security for indigent plaintiffs who are otherwise entitled to preliminary injunctive relief. See Pharm. Soc'y Inc. v. Dep't of Soc. Servs., 50 F.3d 1168, 1174 (2d Cir. 1995); Temple Univ. v. White, 941 F.2d 201, 291-20 (3d Cir. 1991) (upholding waiver of the bond requirement in an action to enforce compliance with the Medicaid Act). Plaintiffs suggest that they are indigent, or at the very least, as recipients of public assistance, they should not be required to post a bond.

No defendant has raised objection to plaintiffs' request for the court to waive the bond, nor have defendants suggested that if a preliminary injunction is otherwise deemed proper, plaintiffs

should be required to post security. Considering Fourth Circuit precedent as well as plaintiffs' status, the court orders that plaintiffs post a nominal cash bond in the amount of $100.00 as security for the payment of such damages as any person may be entitled to recover as result of wrongful injunctive relief. Defendants may move to amend the order if they assert that the limited preliminary injunction will cause them to incur expenses for which plaintiffs should be required to provide security.

## CONCLUSION

Based on the foregoing, plaintiffs' motion for preliminary injunction (DE # 31) is GRANTED. Plaintiffs' motion to certify class (DE # 34) is GRANTED.

Counsel for plaintiffs are directed to provide appropriate notice to the class pursuant to Rule 23 of the Federal Rules of Civil Procedure. Counsel requesting to be appointed as class counsel in plaintiffs' motion for class certification lodged on the docket at entry 34 are appointed pursuant to Fed. R. Civ. P. 23(g). Plaintiffs shall post immediately the bond discussed herein. Further order shall follow addressing case scheduling issues.

SO ORDERED, this the 29th day of March, 2012.

LOUISE W. FLANAGAN
United States District Judge